IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHERIE WHITE,
        Plaintiff,

    v.

CINEMARK USA, INC., dba
CINEMARK MOVIES 8,**

        Defendants.

No. 2:04-cv-397-GEB-CMK

ORDER*

Plaintiff moves for summary judgment on her claims under the California Unruh Civil Rights Act and the California Disabled Persons Act. Cal. Civ. Code §§ 51-53, 54-55.2. Plaintiff also moves for summary judgment on her claim under section 19955 of the California Health & Safety Code. Plaintiff, a quadriplegic, alleges that she encountered barriers at the Defendant's Yuba City movie theater ("Theater"), which she visited on January 4, 2004.

Defendant separately moves for summary judgment on Plaintiff's claim under the Americans with Disabilities Act, 42 U.S.C.

---

* This matter was deemed appropriate for adjudication without a hearing pursuant to Local Rule 78-230(h).

** The caption is amended to reflect the dismissal of Does 1 through 10 (Status (Pretrial Scheduling) Order at 2) and Yuba Cinema Associates, Ltd. (Order July 2, 2004).

1

§§ 12101-12213, as well as all of her state law claims. In addition, Defendant moves for terminating sanctions or, in the alternative, for evidence preclusion sanctions under Federal Rule of Civil Procedure 37(d) and the court's inherent power.[1] Plaintiff opposes Defendant's motion for sanctions and filed a counter-motion for sanctions under Rule 16(f).

**DISCUSSION**

I. <u>Cross-Motions for Sanctions</u>

Defendant argues that terminating sanctions are appropriate because Plaintiff failed to appear at her properly noticed deposition, and Plaintiff's counsel wrongfully prevented Plaintiff's experts from appearing at their properly noticed depositions. Alternatively, Defendant seeks a sanction precluding the testimony of Plaintiff and her two experts.[2] Plaintiff responds that Defendant's motion is an untimely discovery motion that is barred because the Status (Pretrial Scheduling) Order ("Scheduling Order"), as amended, called for all discovery to be completed by April 25, 2005. In addition, Plaintiff seeks monetary sanctions from Defendant under Rule 16(f) in the amount of $11,375.00, as well as an order that Defendant's counsel reimburse Defendant $11,075.50 for the costs incurred preparing its motion for sanctions.

The first issue is whether Defendant may bring a motion for terminating sanctions under Rule 37(d) after the April 25, 2005, discovery "completion" date. (Feb. 18, 2005, Order at 2.) The

---

[1] Unless otherwise indicated, all references to Rules are to the Federal Rules of Civil Procedure.

[2] Defendant also seeks $11,075.50 in costs incurred preparing its motion for sanctions should sanctions be awarded.

Scheduling Order explains that "'completed' means that all discovery shall have been conducted so that all depositions have been taken and any disputes relative to discovery shall have been resolved by appropriate orders, if necessary, and where discovery has been ordered, the order has been complied with or, alternatively, the time allowed for such compliance shall have expired." (Scheduling Order at 2-3.) In addition, the Scheduling Order warns that "[a] party conducting discovery near the discovery 'completion' date runs the risk of losing the opportunity to have a jurist resolve discovery motions pursuant to the Local Rules." (Id. at 3 n.2.) Local Rule 72-302(c)(1), which is cited in the Scheduling Order, states that the magistrate judge hears motions for sanctions under Rule 37. Thus, motions for sanctions under Rule 37 should normally be brought before the magistrate judge within the time allotted for completion of discovery in the Rule 16 scheduling order. Freeman v. Allstate Life Ins. Co., 253 F.3d 533, 537 (9th Cir. 2001) (upholding the requirement that discovery disputes be timely prosecuted before the magistrate judge, as required by the Rule 16 scheduling order and Local Rule 72-302(c)).

However, Plaintiff's attempt to use the Scheduling Order as both a sword (by preventing the deposition of Plaintiff and her experts) and a shield (by preventing sanctions for discovery violations that occurred immediately before the "completion" of discovery) is improper. See Payne v. Exxon Corp., 121 F.3d 503, 508 (9th Cir. 1997) (rejecting the argument that "the district court erred by considering all of [Plaintiff's] discovery misconduct in connection with its decision to dismiss, because the time to challenge [Plaintiff's] responses to [Defendant's] first round of discovery 'had

3

long since passed.'"). Rule 1 requires that Rule 16 and Rule 37 "be construed and administered to secure the just, speedy, and inexpensive determination of every action." Further, "[l]itigants are expected to act in good faith in complying with their discovery obligations, and [Plaintiff's] reliance on [her] own delay to justify refusing to produce [her experts or to attend her own properly noticed deposition] was anything but good faith." Johnson v. J.B. Hunt Transp., Inc., 280 F.3d 1125, 1132 (7th Cir. 2002). Therefore, Plaintiff's argument that Rule 16 insulates her from sanctions because the time for completing discovery has lapsed is erroneous and her cross-motion for Rule 16(f) sanctions is denied.

    A.   <u>Plaintiff's Experts</u>

Defendant did not heed footnote 2 of the Status Order and waited until the final two weeks of discovery to notice the deposition of Plaintiff's two expert witnesses. Defendant's delayed effort to depose Plaintiff's expert witnesses does not justify use of the severe sanction of either dismissal or evidence preclusion.[3]

    B.   <u>Plaintiff</u>

Defendant first noticed Plaintiff's deposition on December 9, 2004, setting the deposition for February 1, 2005. (Burror Decl. Supp. Def.'s Mot. Sanctions ¶ 3.) Plaintiff twice requested to reschedule the deposition, and Defendant accommodated Plaintiff on each occasion. (Id. ¶¶ 3-4.) Plaintiff's counsel unilaterally took the third-noticed deposition off-calendar, but did

---

[3] Likewise, Defendant's claim that in April 2005 it "learned that Plaintiff's disclosures for one of the experts included only a post office box, rendering service of the subpoena much more costly and burdensome" is unpersuasive since Defendant should have addressed this defect closer to the time when the expert report was disclosed in January 2005.

4

not provide an alternative date to hold the deposition. (Id. ¶ 5.) Upon meeting and conferring with Plaintiff's counsel, Plaintiff's deposition was rescheduled for April 11, 2005. (Id. ¶ 6.) Plaintiff did not appear. (Id. ¶ 7.) Afterward, Plaintiff's counsel agreed to produce Plaintiff for a deposition on April 25, 2005 - the last day available for discovery. (Id. ¶ 8.) However, once the magistrate judge denied Defendant's motion to compel the appearance of Plaintiff's experts, Plaintiff, and a third-party witness, Plaintiff refused to appear, claiming that she could not arrange for transportation to the noticed location for the deposition. (Id.)

Terminating sanctions requires a showing of willful disobedience, fault, or bad faith. In re Exxon Valdez, 102 F.3d 429, 432 (9th Cir. 1996). Disobedience, fault, or bad faith exists where "disobedient conduct [is] not shown to be outside the control of the litigant." Fjelstad v. Am. Honda Motor Co., 762 F.2d 1334, 1341 (9th Cir. 1990), quoted in Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993). Defendant fails to identify the ground for a finding of willful disobedience, fault, or bad faith. Indeed, Defendant does not identify this necessary showing as an element of a case-terminating sanction. (Def.'s Br. Supp. Def.'s Mot. Sanctions at 8.) Therefore, Defendant is not entitled to terminating sanctions under Rule 37 since this element will not be raised and addressed *sua sponte*. Furthermore, precluding Plaintiff from testifying and striking her declarations serves as a *de facto* terminating sanction, which requires a specific finding of willful disobedience, fault, or bad faith. United States for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Constr. Co., Inc., 857 F.2d 600, 602-03, 603 n.5 (9th Cir. 1988). Therefore, Defendant's motion for terminating sanctions or

5

evidence preclusion is denied, as is Defendant's request for the costs it incurred in preparing its motion for sanctions.

II. <u>Defendant's Objection to Card's Declaration</u>

Defendant moves to strike the declaration of Joseph Card (Plaintiff's expert), which Plaintiff filed in support of her motion for summary judgment. Defedant argues, *inter alia*, that Card's declaration violates Rule 26 because Card's expert report analyzed the Theater under the 2001 California Building Code ("CBC"), but his declaration analyzed the Theater under the 1984 CBC.[4] Plaintiff characterizes Card's declaration as a supplement to his January 21, 2005, expert report, or a surrebuttal to Kim Blackseth's (Defendant's expert) rebuttal to Card's January 21, 2005, expert report. (Pl.'s Reply Br. Supp. Pl.'s Mot. Summ. J. at 2-3.)

Rule 26(e)(1) imposes a duty to supplement an expert's report if (1) the court so orders, (2) the party learns that the earlier information is inaccurate or incomplete, or (3) answers to discovery requests are inaccurate or incomplete. A party may not use a "non-opinion" as a placeholder to spring a "supplemental opinion" in the eleventh hour that squarely addresses the issues in a case. <u>Keener v. United States</u>, 181 F.R.D. 639, 641 (D. Mont. 1998). As concerning potential violations of the CBC, Card's initial report was a "non-opinion" because it analyzed the Theater under an inapplicable

---

[4] Plaintiff also objects to Card's analysis of the Theater under the Americans with Disability Act Accessibility Guidelines ("ADAAG") because his analysis does not evaluate the Theater under the ADA's "readily achievable" standard. This argument, however, is not a basis for striking Card's declaration as an improper expert report.

6

standard. Cf. id.[5]  Indeed, Card negates the need to supplement his expert report by declaring that the information in his January 21, 2005, report is neither inaccurate nor incomplete.  (Card Decl. ¶ 7.) Therefore, the portion of Card's declaration discussing alleged violations of the 1984 CBC is not a supplement to his January 21, 2005, expert report under Rule 26(e)(1).  Further, Card's declaration cannot be characterized as a valid rebuttal to Blackseth's rebuttal because it was disclosed after the time allotted for rebuttal reports had expired.  (Feb. 18, 2005, Order at 2; Blackseth Decl. ¶ 6.)  In addition, Rule 26(a)(2)(C) does not provide for a surrebuttal report.

Since the portion of Card's declaration discussing alleged violations of the 1984 CBC at the Theater is neither a supplement to his January 21, 2005, expert report, nor a rebuttal under Rule 26(a)(2)(C), the declaration must be considered a separate expert report.  See Keener, 181 F.R.D. at 641-42.  As such, the portions of Card's declaration analyzing the Theater under the 1984 CBC are stricken because they were not submitted within the time allotted for expert reports set forth in the Scheduling Order.  Pickern v. Pier 1 Imports, Inc., 339 F. Supp. 2d 1081, 1088-89 (E.D. Cal. 2004).

---

[5]  Plaintiff argues that the 2001 CBC provisions apply because "barrier removal under federal law . . . is an alteration under state law, and triggers compliance with the current version of the CBC."  (Pl.'s Br. Opp'n Def.'s Mot. Summ. J. at 16.)  This argument, however, does not justify subjecting the Theater to the provisions of the 2001 CBC *before* alterations are made to an existing facility.  Cal. Health & Saf. Code § 19959.

III. Plaintiff's Motion for Summary Judgment[6]

A. Plaintiff's Claims

Plaintiff moves for summary judgment on her claim under the California Unruh Civil Rights Act and the California Disabled Persons Act, arguing that Defendant violated the ADA and the CBC. Title III of the ADA prescribes: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C. § 12182(a). For public accommodations constructed before 1993 ("existing facilities"), discrimination includes "a failure to remove architectural barriers . . . where such removal is readily achievable." Id. § 12182(b)(2)(A)(iv). The ADAAG "'provide valuable guidance for determining whether an existing facility contains architectural barriers.'" Pascutti v. New York Yankees, 87 F. Supp. 2d 221, 226 (S.D.N.Y. 1999), quoted in D'Lil v. Stardust Vacation Club, CIV-S-00-1496, 2001 WL 1825832, at *4 (E.D. Cal. Dec. 21, 2001).

Plaintiff tersely lists aspects of the Theater that allegedly violate the ADAAG. (Pl.'s Br. Supp. Pl.'s Mot. Summ. J. at 6-9.) While citing to violations of the ADAAG will prevent Defendant from obtaining summary judgment on Plaintiff's ADA claims, those violations, standing alone, do not "show that there is a genuine issue as to any material fact [such that Plaintiff] is entitled to judgment

---

[6] "The standards applicable to motions for summary judgment are well known, see, e.g., Rodgers v. County of Yolo, 889 F. Supp. 1284 (E.D. Cal. 1995), and need not be repeated here." Reitter v. City of Sacramento, 87 F. Supp. 2d 1040, 1042 (E.D. Cal. 2000).

as a matter of law." Fed. R. Civ. P. 56(c); <u>Access Now v. South Florida Stadium Corp.</u>, 161 F. Supp. 2d 1357, 1367 (S.D. Fla. 2001). Plaintiff's motion for summary judgment on her state law claims for violations of the ADA is denied because she has failed to demonstrate that the Theater "contained actual barriers that hindered her access." <u>Access Now</u>, 161 F. Supp. 2d at 1367, <u>cited in</u> <u>D'Lil</u>, 2001 WL 1825832, at *5.

Alternatively, Plaintiff argues that she is entitled to relief under the Unruh Civil Rights Act because "she was 'denied full and equal' enjoyment and use of the [T]heater" in violation of the ADA's general non-discrimination language. (Pl.'s Br. Supp. Pl.'s Mot. Summ. J. at 11 (quoting 42 U.S.C. § 12182(a)).) However, the ADA's general non-discrimination language must be considered in light of the regulatory context of the ADA, rather than evaluated in a vaccuum. <u>United States v. Nat'l Amusements, Inc.</u>, 180 F. Supp. 2d 251, 257 (D. Mass. 2001).

Plaintiff's motion for summary judgment on state law claims for violations of the CBC is denied because, as discussed above, those portions of Card's declaration analyzing the Theater under the 1984 CBC are stricken. Consequently, Plaintiff is denied summary judgment on these claims because she cannot establish a necessary element of these theories of liability. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

   B. <u>Defendant's Defenses</u>

In the alternative, Plaintiff moves for summary judgment of Defendant's twenty-one affirmative defenses. To meet her initial burden of production under Rule 56, Plaintiff relies on Defendant's response to an interrogatory ("Question 12") requiring Defendant to

9

identify, *inter alia*, all facts upon which it bases each of its affirmative defenses. (White Decl. Supp. Pl.'s Mot. Summ. J. ¶ 43, Exh. B.) Defendant responded to Question 12 subject to an objection, which Magistrate Judge Kellison sustained. (March 25, 2005, Order at 5.) Pursuant to Magistrate Judge Kellison's order, Defendant supplemented its response to Question 12 by addressing its first, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, thirteenth, fourteenth, eighteenth, and twenty-first affirmative defenses. Thus, Plaintiff has failed to meet her initial burden of production under Rule 56 as to Defendant's second, eleventh, twelfth, fifteenth, sixteenth, seventeenth, nineteenth, and twentieth affirmative defenses because she has not demonstrated the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of '. . . identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact.") (quoting Fed. R. Civ. P. 56(c)). In addition, as to the affirmative defenses that Defendant addressed in its supplemental response to Question 12, Plaintiff fails to meet her initial burden of production under Rule 56 because she has made no effort to show why she is entitled to summary judgment as a matter of law. Id. ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of the motion.").

For these reasons, Plaintiff's motion for summary judgment on Defendant's affirmative defenses is denied. Defendant withdraws the affirmative defenses of laches and statute of limitations in light

of Plaintiff's acknowledgment that she is only seeking relief based on an alleged visit to the Theater on January 4, 2004. (Def.'s Br. Opp'n Pl.'s Mot. Summ. J. at 18 n.10.)

IV.     Defendant's Motion for Summary Judgment

   A.   Standing

Although in its Notice of Motion for Summary Judgment Defendant states that Plaintiff's claim for relief under the Title III of the ADA fails for lack of standing, Defendant's brief is more narrow, since Defendant argues that Plaintiff is not entitled to injunctive relief under the ADA because there is no real or immediate threat of future injury. (Def.'s Br. Supp. Def.'s Mot for Summ. J. at 3-5.)[7] Defendant proffers two arguments to support its conclusion that Plaintiff lacks standing: (1) Plaintiff's visit to the Theater was a "fluke," and (2) there is no threat of future harm because within the upcoming months either Defendant will renovate the Theater, or Yuba City will condemn the Theater for construction of a public road. (Id.)

Plaintiff counters Defendant's first argument by declaring that she regularly travels from her home in Corning to Sacramento along Highway 99, which takes her past the Theater. (White Decl. Opp'n Def.'s Mot. Summ. J. ¶¶ 7-8.) Plaintiff's declaration creates a genuine issue of material fact preventing summary judgment on the

---

[7] Defendant argues in response to Plaintiff's motion for summary judgment that Plaintiff lacks standing to claim that the path from the accessible parking spaces crosses a route that vehicles travel without providing detectable warnings. (Def.'s Br. Opp'n Pl.'s Mot. Summ. J. at 14.) Defendant is granted summary adjudication on this issue because detectable warnings are designed to assist the visually impaired, and Plaintiff is not visually impaired. Parr v. L&L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1082 (D. Haw. 2000).

ground that Plaintiff's visit to the Theater was a "fluke."

Defendant's second argument "'[confuses] mootness with standing.'" Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000), quoted in Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 221-22 (2000) (per curiam). To prevail, Defendant must show that it is "absolutely clear that the alleged wrongful behavior could not reasonably be expected to reoccur." Adarand, 528 U.S. at 222 (citation omitted). Neither Defendant's submission of a project application to Yuba City for a proposed renovation of the Theater, nor the prospect that Yuba City *may* condemn the Theater to construct a public road meets the lofty showing required by Adarand. Therefore, Defendant's motion for summary judgment on Plaintiff's ADA claim for lack of standing is denied.

In its reply brief, Defendant argues, for the first time, that Plaintiff did not suffer an injury in fact because Plaintiff was capable of actually accessing the Theater. (Def.'s Reply Br. Supp. Def.'s Mot for Summ. J. at 10.) Defendant's argument, however, incorrectly assumes that Plaintiff must be incapable of entering the Theater to sustain an injury in fact. Cf. Beomino v. Love's Rest., 954 F. Supp. 204, 207 (S.D. Cal. 1997) (analyzing the Unruh Civil Rights Act and concluding, "[i]f a finding that ultimate access could have been achieved provided a defense, the spirit of the law would be defeated.").

B. ADA

1. Barriers

Defendant asserts that the ADAAG do not apply to the Theater because it was built before January 1993. (Def.'s Br. Supp. Def.'s Mot. Summ. J. at 6.) Rather, Defendant contends, "the Theater is

subject to the less burdensome readily achievable standard." (Id.) Although ADAAG violations are not conclusive proof of a barrier in existing facilities, they "'provide valuable guidance for determining whether an existing facility contains architectural barriers.'" Pascuiti, 87 F. Supp. 2d at 226 (S.D.N.Y. 1999), quoted in D'Lil, 2001 WL 1825832, at *4; see 28 C.F.R. § 36.304(g) ("The requirements for barrier removal [in existing facilities] shall not be interpreted to *exceed* the standards for alterations in [the ADAAG].") (emphasis added). Thus, Defendant's motion for summary judgment on Plaintiff's ADA claim for want of architectural barriers is denied because Plaintiff has proffered sufficient evidence to create a genuine issue of material fact that such barriers exist. Access Now, 161 F. Supp. 2d at 1367.

### 2. Readily Achievable

Alternatively, Defendant argues that summary judgment is appropriate because the proposed barrier removal is not readily achievable. Readily achievable means "easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(a). "Whether a specific change is readily achievable 'is a fact intensive inquiry that will rarely be decided on summary judgment.'" Colo. Cross Disability Coalition v. Hermanson Family Ltd. P'ship I, 264 F.3d 999, 1022 (10th Cir. 201), quoted in D'Lil, 2001 WL 1825832, at *5 (listing ten "factors to be considered"). "[Plaintiff] bear[s] the initial burden of suggesting a method of barrier removal and proffering evidence that [her] suggested method meets the statutory definition of 'readily achievable.' If [Plaintiff] meet[s] this burden [Defendant] then bear[s] the ultimate burden of proving that the suggested method of removal is not readily

achievable." Pascuiti v. New York Yankees, 98 CIV. 8186, 1999 WL 1102748 (S.D.N.Y. Dec. 6, 1999), cited in Colo. Cross, 264 F.3d at 1005-06.

Defendant asserts that Plaintiff fails to meet her initial burden of showing that proposed changes are readily achievable because "[she] only addresses . . . the cost of barrier removal." (Def.'s Br. Supp. Def.'s Mot. Summ. J. at 9.) Further, Defendant argues that Plaintiff "fails to offer evidence regarding the financial resources of the facility at issue, . . . fails to offer design plans under the readily achievable analysis relevant here[,] . . . [and] fails to provide any evidence that Yuba City would approve [her] proposed set of modifications." (Id.) However, Plaintiff submits with Card's declaration a "Cost Analysis letter" written to Plaintiff's counsel listing the projected costs of "removing architectural barriers per 1990 [ADA] and [CBC] Title 24 requirements," and organizing those costs in logical categories. (Card Decl. ¶ 4, Exh. B.) Attached to this letter is a set of specific construction plans for the Theater addressing *some* of the alleged ADA violations at the Theater outlined in Card's declaration. (Id. at 2-13.) In addition, Plaintiff proffers the report of Harold Littlejohn, which analyzes Defendant's financial status and concludes that Defendant "has the financial capability of spending reasonable amounts on needed improvements to comply with ADA." (Burror Decl. Supp. Def.'s Mot. Summ. J. at ¶ 8, Exh. F.)

Defendant rejoins that Plaintiff fails to provide financial analysis of the Theater, as opposed to Defendant's overall operations; however, this failure does not negate the Plaintiff's showing as to the other factors. Cf. Colo. Cross, 264 F.3d at 1009 (holding that

14

plaintiff's failure to provide specific construction plans, specific cost estimates, and the added nuance of the public accommodation being a historic building presented a "close case" for finding that plaintiff met his initial showing).  Therefore, Defendant is denied summary judgment on Plaintiff's ADA claims on those barriers addressed in the Advanced Design Consultants' Accessibility Improvements Plan since a genuine issue of material fact exists on the question of whether removal of those alleged barriers is readily achievable.  However, since Plaintiff failed to counter Defendant's motion for summary adjudication on all alleged ADA violations that are not addressed in the Advanced Design Consultants' Accessibility Improvements Plan, Defendant is granted summary adjudication on those issues.  (Card Decl. ¶ 4, Exh. B.)  Therefore, the remaining alleged ADA violations that survive Defendant's motion for summary judgment include:

(1) Path of travel from the public way to the Theater's main entrance;

(2) Improvements to the disabled parking area, including installation of level parking and unloading area, proper striping, and signage;[8]

(3) Ramps, stairs, and landings at the main entrance;

(4) Removal of barriers in the men's restroom; and

(5) Removal of barriers in the women's restroom.

Only those improvements illustrated in the Advanced Design Consultants' Accessibility Improvements Plan survive summary

---

[8] As discussed above in footnote 7, however, Plaintiff does not have standing to argue that the lack of detectable warnings in the route between the accessible parking spaces and Theater constitutes a violation of the ADA.

15

adjudication.

C. <u>CBC</u>

Defendant meets its initial burden of production under Rule 56 for summary judgment on Plaintiff's state law claims for violations of the CBC because it points to an absence of evidence establishing a violation of the applicable CBC. (Blackseth Decl. ¶¶ 7-8.) For the reasons set forth in Part II above, those portions of Card's declaration analyzing the Theater under the 1984 CBC are stricken. Consequently, Plaintiff fails to show that a genuine issue of material fact exists on her claim under section 19955 of the California Health and Safety Code. Cal. Health & Saf. Code § 19958.6. Similarly, Plaintiff fails to create a genuine issue of material fact on her claim under the Unruh Civil Rights Act or the California Disabled Persons Act for violations of the applicable CBC. Cal. Civ. Code §§ 51(d), 54.1(a)(3). Therefore, Defendant is granted summary adjudication on Plaintiff's claim under section 19955 of the California Health and Safety Code. Defendant is also granted summary adjudication on Plaintiff's claims under the Unruh Civil Rights Act and the California Disabled Persons Act for violations of the CBC.

In addition, Defendant is grated summary adjudication on Plaintiff's claim for negligence per se because Plaintiff conceded that she does not seek actual damages. (Tr. of Mar. 8, 2005, Hr'g at 29:24-30:2.)

**CONCLUSION**

The parties' cross-motions for sanctions are denied. Defendant's objection to Card's analysis of the Theater under the 1984 CBC is sustained, and paragraphs 7 and 8 of Card's declaration, as well as those portions of paragraph 9 analyzing the Theater under the

1984 CBC, are stricken. Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment on Plaintiff's claims under the ADA, the Unruh Civil Rights Act, and the California Disabled Persons Act is denied. Defendant is granted summary adjudication on Plaintiff's claim under section 19955 of the California Health and Safety Code and on Plaintiff's negligence per se claim. Defendant is granted summary adjudication on Plaintiff's claims under the Unruh Civil Rights Act and the California Disabled Persons Act as to alleged violations of the CBC. Defendant is also granted summary adjudication on Plaintiff's claims under the Unruh Civil Rights Act, the California Disabled Persons Act, and the ADA as to alleged violations of the ADA, except for those alleged ADAAG violations addressed in the Advanced Design Consultants' Improvements Plan.

IT IS SO ORDERED.

DATED: August 3, 2005

/s/ Garland E. Burrell, Jr.
GARLAND E. BURRELL, JR.
United States District Judge